## WINE RY. APPLIANCE CO. v. BALTIMORE & O. R. CO.
### No. 2102.

District Court, D. Maryland.
Nov. 10, 1933.

Gilbert P. Ritter and Henry K. Muir, both of Washington, D. C., for plaintiff.

Edwin S. Clarkson, of Washington, D. C., for defendant.

WILLIAM C. COLEMAN, District Judge.

This suit involves eleven patents, which may be briefly and collectively described as relating to door-locking devices for drop-door cars of varying design, including doors used upon flat-bottom cars which are disposed in horizontal position when closed; doors used upon hopper-bottom cars which are inclined from a horizontal position when closed and are adapted to swing downward from the inclined position when opened; and doors used upon the drop-bottom gondola type of car which swing transversely of the car and are disposed in a horizontal position when closed. All of these doors swing open by gravity, and thus discharge the lading.

These eleven patents and their respective claims that are in suit, are as follows: (1) Kadel and Pilcher patent No. 1268725, issued June 4, 1918, claims 2 and 11 only; (2) Kadel patent No. 1434953, issued November 7, 1922, claim 2 only; (3) Wine reissue No. 15792 of March 11, 1923, claims 6, 7, and 10 only; (4) Wine patent No. 1431499, issued October 10, 1922, claim 1 only; (5) Kadel patent No. 1738057, issued December 3, 1929, claims 7, 15, 16, 22, and 27 only; (6) Kadel patent No. 1743144, issued January 14, 1930, claims 8, 9, 15, and 18 only; (7) Kadel patent No. 1737927, issued December 3, 1929, claim 6 only; (8) Kadel patent No. 1733736, issued October 29, 1929, claim 8 only; (9) Wine patent No. 1460009, issued June 26, 1923, all claims, ten in number; (10) Wine patent No. 1455694, issued May 15, 1923, claim 11 only; (11) and Wine patent No. 1486210, issued March 11, 1924, claims 1 and 4 only.

The various devices of the defendant are properly divisible into three classes, which, with the particular patents they are alleged to infringe, are as follows: First, the Enterprise device (so-called because manufactured by the Enterprise Railway Equipment Company) which is alleged to infringe patents (1) and (2); second, the "XLT" devices (a designation coined by defendant for convenience) which are alleged to infringe patents (1), (3), (4), (5), (6), (7), and (8); and third, the drop-door gondola car device which is alleged to infringe patents (9), (10), and (11).

The plaintiff company is engaged in the manufacture of various railway appliances, including those involved in the patents in suit. To the plaintiff's charge that the defendant, the Baltimore & Ohio Railroad Company, has manufactured and is using, or has used, car door-locking devices of various types which infringe one or more of these patents, the defendant asserts the usual defenses of (1) noninfringement; and (2) invalidity of the plaintiff patents as evidenced by (a) prior public use or (b) prior patents, or both. It is axiomatic that the burden of proving infringement is upon the party alleging it, namely, the plaintiff, and that, likewise, the burden of proving invalidity is upon the party alleging it, namely, the defendant. The various patents will be considered, in the order above named, in their respective relations to the three different types of alleged infringing devices.

Kadel and Pilcher Patent No. 1268725 and Kadel Patent No. 1434953 in Relation to Defendant's Enterprise and "XLT" Devices.

Of the Kadel and Pilcher patent, only claims 2 and 11 are in suit. These claims are as follows: "2. A railway car having sides and a hinged door, said door extending transversely of the car from one side to the other, hooks pivoted to the sides of the car and adapted to engage the said door when the latter is drawn into closed position, said hooks being so formed and disposed as to fall by gravity into engaging position and to be swung toward the door pintles for disengagement with the said door." "11. A railway car having sides and a hinged door extending transversely of the car from one side to the other, hooks pivoted to the car and adapted to engage the said door when the latter is drawn into closed position, and means for closing the door, said means embodying a lever extending outside of the line of one of the car sides and removably attached to the door, and means on the door for the removable attachment thereto of the lever."

It is not maintained by plaintiff that a single element embodied in either of these claims is new or that, by itself, it is the proper subject of a patent, but merely that, by the combination of old elements, a new device, producing new results, is accomplished. Summarized very briefly, the basic idea created by the combination as set forth in claim 2 rests in the gravity hooks and the manner of their engaging the doors of the car. The same is true with respect to claim 11 with the addition of a further means for closing the door, in the form of a lever and a fixed attachment in connection with which the lever operates. Plaintiff asserts that this is a pioneer patent because prior to this Kadel invention, all known car door-locking devices which really had for their object the securely locking of the door rather than merely fastening the door as an auxiliary or aid to some other device for keeping it firmly and tightly closed, were dependent upon a winding mechanism, that is to say, upon a device whereby with the aid of levers, cogs, and chains, the doors were opened and closed, and, when closed, were primarily dependent upon such mechanism for proper security. It is true the Kadel and Pilcher patent in the specifications provides that any convenient arrangement for raising the doors into closed position may be used, but, as further stated, the customary winding arrangement is preferably omitted and the doors are lifted by hand, or, as was demonstrated by witnesses in the course of the trial, if the doors are of the so-called sawtooth hopper type, that is, doors which are inclined from a horizontal position when closed and are adapted to swing downward from the inclined position when opened, they may be operated by pressure of the foot.

We find that the weight of the credible evidence supports plaintiff in this contention. Although defendant, in support of its contention that this patent is invalid because of prior public use, has introduced extensive and uncontradicted testimony to the effect that hooks or latches pivoted upon the sides of cars and adapted to engage by gravity the car doors when the latter were drawn into closed position, were in use as early as 1907 on the Pittsburgh & Lake Erie Railroad, and on the Big Four Railroad as early as 1912; and although such devices of varying types bore prima facie close resemblance to the Kadel and Pilcher device, nevertheless there is no evidence in the case which proves that the pivoted hooks or latches in these earlier

devices did more, or were intended to do more, than serve as an auxiliary or substitute for the winding mechanism when it became out of order, as it frequently did. This is evident from the fact that in none of these earlier devices did the pivoted hook or latch engage the door itself, or any substantial stiffening beam or member attached to the door, but merely locked into a keeper or strap of such construction as poorly adapted to carry continuously the strain of the heavy loads, which obviously would rest upon it if the doors were not supported in closed position by some other device such as a winding mechanism, which we find was always employed in these earlier devices; and which, furthermore, rendered it impossible or virtually so, for the operator of the doors to close them by hand or foot manipulation, because prevented by various parts of this winding mechanism from assuming a position with relation to the car door which would enable him to close it in such manner. Also, it appears from the earlier devices of this sort upon which defendant primarily relies to show prior public use, that pivoted hooks or latches were equipped with cams or dogs underneath as well as above them, the primary purpose of which was "to set" the hooks or latches when the doors were about to be opened, thus necessitating the "unsetting" by hand of these cams or dogs when the doors were about to be closed again, the effect of which was thereby, of course, to do away, for all intents and purposes, with the theory of gravity-latching or locking which is one of the basic principles embodied in the Kadel and Pilcher patent.

Similarly, we find in none of the prior art patents which have been cited, any conception of the basic idea embodied in the Kadel and Pilcher patent. For these reasons, we believe that this patent is valid, but we have still to determine whether it is infringed by either the Enterprise or the "XLT" devices of the defendant. Contrary to the Enterprise device, all of the "XLT" devices embody, instead of pivoted hooks engaging the door or a fixed part thereof, the reverse condition, namely, fixed hooks into which engage movable latches. The same Enterprise device was involved in Wine Railway Appliance Co. v. Enterprise Railway Equipment Co., 25 F. (2d) 236, and was there held by the Circuit Court of Appeals for the Sixth Circuit to have infringed Kadel patent No. 1434953, also involved in this suit. As already explained, the Enterprise device plaintiff claims also infringes Kadel and Pilcher patent No. 1268725.

The Circuit Court of Appeals for the Sixth Circuit in the above case, found claim 2 of Kadel patent No. 1434953 to be valid, and also to have been infringed by a device which, as we have just stated, was identical with the Enterprise device of defendant in the present suit. Claim 2 reads as follows: "2. A door mechanism for railway cars including a door hinged to the car body, a channel secured to the door and having an end thereof extending beyond an edge of the door, a hook pivoted upon the car and arranged to seat beneath either flange of the said channel, the hook being so arranged and proportioned that when seated beneath one of the said flanges, the door will be held in partly closed position, and when seated beneath the other flange, the door will be held in fully closed position." With the conclusion of the Circuit Court of Appeals for the Sixth Circuit, and the reasoning upon which it is based, we concur, and, therefore, since claim 2 of Kadel No. 1434953 is the only claim here involved, we deem it sufficient to quote the following from the court's opinion, and to adopt it as part of our own opinion: (pages 237, 238 of 25 F.(2d) : "Kadel's claim 2 is confined to his specific construction, and, in view of the selection by defendant of this particular form out of the variety of forms open to it, we are not satisfied to say that it involved no invention. Instead of extending from the outer end edge of the swinging door some appropriate form of bracket or extension carrying ledges or notches for successive two-step engagement with the swinging hook, he uses a piece of ordinary channel iron having one of its flanges attached to the outer face of the door and projecting beyond its end, making the web of the channel iron to be at right angles to the door and the other flange to be parallel to the door and two or three inches away. He then employed these already existing flanges of the channel iron as his two successive engaging ledges. This was simple but ingenious. The construction, plainly, is cheap, strong, and efficient. Channel iron had always been familiar, but, during the years of experimenting with this type of device, no one had ever thought of using it. It does not appear that it had ever been used as a two-step engaging member in any art. We consider this claim valid.

"We also think defendant does not escape infringement by the change which it has made. Kadel places his pivoted engaging hook adjacent to the open side of the channel iron. For his final step, the hook swung under what would then be the bottom or outside flange of the channel; for his first step, it swung

into the open side of the channel, engaging the upper flange thereof. The claim calls for 'a hook pivoted upon the car and arranged to seat in either flange of the said channel, the hook being so arranged and proportioned that when seated beneath one of the said flanges the door will be held in a partly closed position, and when seated beneath the other flange the door will be held in a fully closed position.' ' The defendant reverses its channel so that the open side is away from the hook. For the final step the hook seats beneath the lower flange of the channel precisely as in the Kadel, except from the other side; to accomplish the first step, defendant cuts an opening in the channel web, through which opening the hook projects to a position beneath the upper flange. It is true that this opening is placed slightly down from the lower side of the upper flange, so that the hook does not directly engage this upper flange but rather the upper edge of the opening in the web. No purpose is apparent in this unnecessarily awkward and expensive construction, unless it be to escape infringement; and it fails in this purpose. The claim does not literally require that the hook shall successively bear against the under surface of the two flanges, if in some other equivalent way it is seated beneath them. For all functional purposes, the slight portion of the web against which the hook bears is a part of the upper flange, and the hook does not fail to be seated beneath it because it is also a slight distance below. It is true that defendant does not use the ordinary rolled channel. It constructs a rather complicated bracket; but the part which projects and co-operates with the hook has the characteristic web and flanges, and is a channel."

It is obvious that the novelty in claim 2 lies in the specific two-step operation involved in closing the door. Defendant admits the claim is valid, but denies infringement on the ground that in the Enterprise device the hook by engaging, in both "steps," the web, and not the flanges of the stiffening member, performs a different function and accomplishes a much tighter, stronger locking of the door. But for the reasons given, we are not persuaded by this argument. In further support of defendant's contention, that this patent is not infringed, we are referred to two patents both of later application and issuance, namely, patents to Campbell No. 1577688, and No. 1584841, and the point is emphasized that they were therefore not before the court in the Ohio case, and that had they been, there is a presumption that the result would have been different. But in answer to this, it is sufficient to say, first, that although not issued at the time of the Ohio suit, the defendant there could have disclosed the inventions alleged to have been embodied in them; and, second, it is fundamental that infringement is not avoided by any presumptive validity attaching to a patent subsequently issued. See Sanitary Refrigerator Co. v. Winters, 280 U. S. 30, 50 S. Ct. 9, 74 L. Ed. 147.

Having thus found that claim 2 of Kadel No. 1434953 is valid and infringed by defendant's Enterprise device, we revert to further consideration of the Kadel and Pilcher patent No. 1268725 and are unable to conclude that the Enterprise device also infringes claim 2 of that patent, because if that claim be construed, as we think it cannot be, as broad enough to embrace a two-step operation, then claim 2 of Kadel patent No. 1434953 would be invalid as a subsequent patent embodying the same thing embraced by a prior patent. With respect to claim 11 of the Kadel and Pilcher patent, its basic novelty is the same two-step closing operation but in addition, it embraces a bracket on the angle bar for the insertion of a lever to complete the closing operation, which is not involved in claim 2 of Kadel patent No. 1434953 (although a shouldered bracket designed for the same purpose is embraced in claim 1 which is not here in suit, and appears on the model of the Enterprise device introduced as an exhibit in the present suit). Suffice it to say we find that, although the use of levers or crowbars to assist in the closing of the early types of hinged car doors was quite common and long antedated the Kadel and Pilcher conception, nevertheless, we find nothing in the testimony in suit which indicates that the means on the stiffening member for accommodating the lever was ever embodied in the earlier devices, and we think it is sufficiently new and practical to amount to patentable invention. Also, we believe that the shouldered bracket on the Enterprise device is an equivalent of this means embraced within a proper construction of claim 11, but for other reasons already explained, we do not find that the Enterprise device infringes claim 11, namely, because claim 11, just as claim 2, may not reasonably be construed to include the two-step closing operation. Summarizing, therefore, we find that claims 2 and 11 of Kadel and Pilcher patent No. 1268725 are valid, but we fail to find that either of them has been infringed by defendant's Enterprise device, although we do find that the latter device infringes

claim 2 of Kadel patent No. 1434953, and that that claim is valid.

Before passing from Kadel and Pilcher patent No. 1268725, we have still to consider whether it is infringed by the other devices of the defendant, all of which embrace a fixed hook and a movable latch, as opposed to a pivoted hook and a fixed beam or stiffening member, and which are known as defendant's "XLT" devices. They vary in construction with respect to the form of stiffening member, and the manner in which the latch and housing are designed and attached to the door or stiffening member. However, in view of what we have already said about Kadel patent No. 1434953, with respect to the use of the stiffening member in different positions, without thereby giving rise to another patentable invention, we believe that it is only necessary to state our conclusions with respect to these variations, by saying that we do not think any of them as embodied in the defendant's "XLT" devices is materially different or novel. We find support for this conclusion in the fact that, as has been admitted on behalf of both plaintiff and defendant, many types of stiffening members, as well as various types of latches and the accommodations of each to the other, are all old in the art.

Coming, then, to the precise question whether or not these "XLT" devices of defendant are the equivalent of the construction contemplated by Kadel and Pilcher patent No. 1268725 and Kadel patent No. 1434953, none of which have fixed hooks, we must determine what is the true rule by which the answer to this question is to be found. The most pertinent interpretation of the rule governing the range of equivalents in its application to patents of this kind is that contained in the case of Sanitary Refrigerator Company v. Winters, 280 U. S. 30, at page 41, 50 S. Ct. 9, 12, 74 L. Ed. 147, where the Supreme Court said:

"There is a substantial identity, constituting infringement, where a device is a copy of the thing described by the patentee, 'either without variation, or with such variations as are consistent with its being in substance the same thing.' Burr v. Duryee, 1 Wall. 531, 573, 17 L. Ed. 650. Except where form is of the essence of the invention, it has little weight in the decision of such an issue; and, generally speaking, one device is an infringement of another 'if it performs substantially the same function in substantially the same way to obtain the same result. * * * Authorities concur that the substantial equivalent of a thing, in the sense of the patent law, is the same as the thing itself; so that if two devices do the same work in substantially the same way, and accomplish substantially the same result, they are the same, even though they differ in name, form, or shape.' Machine Co. v. Murphy, 97 U. S. 120, 125, 24 L. Ed. 935. And see Elizabeth v. Pavement Co., 97 U. S. 126, 137, 24 L. Ed. 1000. That mere colorable departures from the patented device do not avoid infringement, see McCormick v. Talcott, 20 How. 402, 405, 15 L. Ed. 930. A close copy which seeks to use the substance of the invention, and, although showing some change in form and position, uses substantially the same devices, performing precisely the same offices with no change in principle, constitutes an infringement. Ives v. Hamilton, 92 U. S. 426, 430, 23 L. Ed. 494. And even where, in view of the state of the art, the invention must be restricted to the form shown and described by the patentee and cannot be extended to embrace a new form which is a substantial departure therefrom, it is nevertheless infringed by a device in which there is no substantial departure from the description in the patent, but a mere colorable departure therefrom. Compare Duff v. Sterling Pump Co., 107 U. S. 636, 639, 2 S. Ct. 487, 27 L. Ed. 517."

In that case the Supreme Court was dealing with a patent for a latch of the swinging lever type, particularly adapted for use on refrigerator doors, and found the differences between the patented device and a device which was held to have been infringed by it, to have been as follows (page 41 of 280 U. S., 50 S. Ct. 9, 12): "Despite the changes in the Dent latch from the Winters and Crampton structure we find that the two devices are substantially identical, operating upon the same principle, and accomplishing the same result in substantially the same way, and that the slight change in the form of the Dent latch is merely a colorable departure from the Winters and Crampton structure.

"In the Dent latch, as stated by the Circuit Court of Appeals for the Seventh Circuit [24 F. (2d) 15], the lug on the inner side of the triangular head of the keeper is a part of the side of the head. And at the place where the shortened upper arm of the latch lever comes in contact with it, the surface of this lug forms in effect the upper side of the keeper head as a substitute for the upper side in the Winters and Crampton structure, which, while left in place, performs no function whatever, just as if it were cut away.

"Although the claims of the Winters and Crampton patent are limited to the structure therein disclosed, we find that they are infringed by the device of the Dent latch. Both Circuit Courts of Appeals recognized that the Winters and Crampton patent, although thus limited had some range of equivalents; and we think that, though it be a narrow one, it is sufficient."

Briefly summarized, the rule as laid down by the Supreme Court may be stated to be that if two devices do the same work in substantially the same way, and accomplish substantially the same result with no change in principle, they are the same, even though they differ in name, form, or construction. Applying this test, then, to the two devices, we find that they are both intended to, and do catch and lock the swinging door. By the plaintiff's device, the stiffening member on the door is swung into engagement with the gravity hook pivoted to the side of the car and then locked; whereas by defendant's device, the movable latch, instead of a stiffening member on the door, is swung, by exactly the same method, into engagement with a fixed hook on the side of the car, and thus locked. But nowhere in the Kadel and Pilcher patent, or in the Kadel patent, either in the specifications, drawings, or claims, is there any mention of a fixed hook on the side of the car. On the other hand, it is clear from the testimony that fixed hooks with latches of the same general design as those embodied in defendant's devices, were well known in other uses at the time these patents were applied for, although there is no evidence that they had been applied to this particular art prior to 1922. This being true, can we say, without extending the rule of equivalents to unreasonable length, that the principle is the same in the two devices here in suit? Of course, no rule of this kind should be too rigidly applied because any language employed in defining the rule must, of necessity, bear in varying degrees of pertinency upon each given state of facts. However, there is another rule which must be applied along with this rule of equivalents, concerning which we must be just as cautious lest we do violence to it, as we must be cautious lest we unduly restrict the rule of equivalents. We refer to the rule that every claim in a patent to be valid must be interpreted in the light of the specifications and drawings that accompany it; that it must be given an interpretation that reasonably corresponds to those specifications and drawings; that neither the specifications, drawings, nor claims shall be given an interpretation broader than may be reasonably inferred from their respective terms, although, of course, it is true that a mechanical equivalent even though not actually described by the claim, may sometimes amount to an infringement. Clough v. Gilbert & Barker Manufacturing Co., 106 U. S. 166, 176–178, 1 S. Ct. 188, 27 L. Ed. 134; Consolidated Safety-Valve Co. v. Crosby, etc., Valve Co., 113 U. S. 158, 161, 178, 5 S. Ct. 513, 28 L. Ed. 939; Walker v. Giles (C. C. A.) 218 F. 637; Yancey v. Enright (C. C. A.) 230 F. 641. Mr. Kadel has testified, and with some force, that because fixed hooks and movable latches were so well known long before his inventions, they must be read into the specifications and claims as an alternate construction reasonably in contemplation of those conversant with the art. But there might be more force to this argument were either of these two patents in fact pioneer inventions in this field as the term "pioneer" is understood, namely, as denoting the first conception of the basic principle. We do not believe this is the case, because although the Kadel and Pilcher patent was pioneer in the sense that it was the first to embody the more simplified form of locking car doors securely with pivoted gravity hooks without the combination of a winding mechanism, it does not follow that plaintiff should thereby be permitted to adopt, from other arts, devices therein long admittedly common, after defendant has been the first to conceive the advantages flowing from such adoption, and then be permitted to say, for the first time, in effect, to the defendant, "This is something which we all knew before you ever thought of it."

While somewhat akin to a change of the relative position or a reversal of parts—which it is conceded does not of itself avert infringement—defendant's construction is not precisely that, but rather a complete change in the lock mechanism, because if the latch of the Baltimore & Ohio devices were fixed to the side of the car instead of to the door, and the hook were fixed to the door or its stiffening member, the same locking function could not be accomplished without a very material reshaping of both the latch and the hook. And the same would be true with respect to the parts of the patented device if they were sought to be interchanged. This fact, added to the fact that neither the moving part in the patented device, that is, the pivoted hook, bears any resemblance in construction to the moving part in the Baltimore & Ohio devices, that is, the latch; nor the fixed part in the

patented device, that is, the angle iron, bears any resemblance in construction to the fixed part in the Baltimore & Ohio devices, that is, the fixed hook, would seem to prove that there is a material difference between the two devices not accounted for by a mere reversal or transposition of the fixed and the moving part. Furthermore, distinct difference with respect to distribution of strain to or through these parts is apparent. A narrow latch-pin mounted at one end of a stiffening member and engaging a hook on the side of the door, does not indicate the same strength as does the engagement of such stiffening member itself directly with a hook on the side of the door.

▊ The fact that the invention in the patent is a simple one whose function is therefore the more easily reproduced is not the criterion of infringement. We must not confuse the rule that simplicity of invention does not defeat patentability, with the rule whereby alleged equivalents are to be tested. If the Baltimore & Ohio devices are in fact more than a mere colorable departure from the patented device, that is sufficient. They may or may not themselves be patentable. But with this question we are not here concerned.

For the aforegoing reasons, we are forced to the conclusion that the defendant's "XLT" devices do amount to a substantial, and not merely a colorable departure from the Kadel and Pilcher patent No. 1268725 and Kadel patent No. 1434953, and therefore do not infringe these patents.

Were evidence of success and wide utility with respect to the Kadel and Pilcher basic appliance necessary, it is to be found in the uncontradicted testimony that more than 200,000 units have been sold by the plaintiff company to some 70 railroads throughout the United States, and that in 1931, 96 per cent. of all new hopper cars on American railroads were equipped with this device.

Wine Reissue Patent No. 15792, in Relation to Defendant's "XLT" Devices.

▊ Claims 6, 7, and 10 only of this patent are involved in the present suit. They each relate to a device embodying hooks fixed to the side of the car, with latches bracketed upon the door stiffening member, and collectively described they embrace an improvement in the utilization of the latches, latch dogs, and fixed hooks in co-operation with each other, to relieve the door hinges of some of the load imposed upon them in other similar devices, and thereby to prevent the door from sagging downward and from moving side-

wise. The three claims are broad and not materially different except to the extent that one or another emphasizes the prevention of endwise or side-wise movement of the door. Defendant asserts that these claims are invalid because anticipated by British patent No. 122, of the year 1878, and by the device used upon the Pittsburgh & Lake Erie Railroad as early as 1907, which we have already discussed.

The British patent does embrace a latch with lever or drop-piece which serves the same purposes, that is, to lock and hold the latch in position, as does the dog in the claims in suit, but as and when conceived it had no application to use in combination with the other elements involved in these claims whereby an entirely new and useful purpose was accomplished, and in fact its construction —without having anything akin to the support given to the latch by the bracket in the claims in suit—would alone seem to be a distinction sufficient to refute equivalency. Also, we find, for reasons already sufficiently disclosed during our consideration of the Kadel and Pilcher patent, that the Pittsburgh & Lake Erie Railroad device is distinctly different.

Turning to the question of infringement, defendant's contention is that infringement is avoided by reason of the fact that the claims must be narrowly construed so as to depend upon the latch engaging the bottom of the fixed hook, whereas it is claimed that every latch on every "XLT" device is specially designed so as to escape the bottom of the hook by one-eighth of an inch, and the working drawings introduced in evidence specially so provide—in some instances by later revision, which may or may not have some significance in this connection. But in any event, this very slight clearance in the one case and not in the other seems to us to be an entirely insufficient ground upon which to avoid infringement, assuming that in fact such clearance is maintained in the "XLT" structures when in use, which is an assumption not justified upon the evidence, because photographs taken, within the present year, of Baltimore & Ohio cars equipped with "XLT" devices show clearly that the latches do not maintain any clearance above the bottom of the hooks. Nor do we consider this evidence is overcome by defendant's rebuttal testimony to the effect that such cars are not representative, but are of a class ready to be "shopped" for repairs. On 71 per cent. of all the cars of defendant that plaintiff caused to be examined, the latches were completely

down. The latches on defendant's devices have a curved end projection absent in the Wine device, but, although this feature will be again considered with respect to Kadel patent No. 1738057, it has no controlling effect in the comparison just made.

Thus, we find that claims 6, 7, and 10 of Wine reissue patent No. 15792 are infringed by all of defendant's "XLT" devices.

### Wine Patent No. 1431499, in Relation to Defendant's "XLT" Devices.

Only the first claim of this patent is involved in the present suit. It reads as follows: "1. A railway car having a door hinged upon the car body, a stiffening member affixed to the door and extending to near the end of the same, a bracket near the end of the door connecting the stiffening member and the door, a door lock carried by the bracket, and a cooperating member carried by the car in a position for engagement thereby when the door is swung into closed position."

It will thus be seen that this claim comprises a latch construction on the door stiffening member which engages a co-operating member affixed to the side of the door. The main advantage claimed for this patent is that by having the latch bracket support the door beam, or stiffening member, against the door, there is thus overcome more successfully than by the earlier structures, the stress and strain of the load on the doors. However, we find this claim invalid because anticipated as early as 1917 by a structure employed on cars then in use, as testified to by Mr. Argyle Campbell, president of the Enterprise Railway Equipment Company, which designed this earlier structure, and which embodies the basic idea of the claim in suit. Therefore, it becomes unnecessary to determine whether the particular "XLT" device of defendant which is alleged to infringe this claim does in fact do so, although we will say that we incline to the view that the two are not equivalents. It should be noted that both the issuance of, and application for, this patent antedated the issuance and original application of Wine Reissue patent No. 15792, and therefore the latter would be invalid if embraced within the former. But it is not, because although claim 1 of Wine patent No. 1431499 is extremely broad in its description of the locking mechanism, there is not merely a distinct structural difference, but a distinct functional difference as well, because of the fact that the pivoted latch on the door engages the fixed member on the car side in a position parallel, or virtually so, to the car side, while in Wine Reissue patent No. 15792, the engagement is at a right angle.

### Kadel Patent No. 1738057, in Relation to Defendant's "XLT" Devices.

In this patent five claims are involved, 7, 15, 16, 22, and 27. They embrace a latch construction on the door stiffening member which engages a fixed hook, bracket, or keeper, on the side of the car. The only novelty asserted in claim 7, 15, and 22 is the curved-end projection of the latch by which a more secure, tighter-fitting locking device is obtained, this projection being adapted to co-operate with the hook, bracket, or keeper fixed to the side of the car, so as to transmit from it the bulging strains of the car body through the latch and its housing to the stiffening member. The only novelty asserted with respect to the remaining two claims, namely, 16 and 27, is that the latch is not mounted on the door plate, but on a wholly independent door beam or spreader. One of defendant's "XLT" devices is substantially the equivalent in construction of this device. Plaintiff contends that the projected construction of the latch constitutes a useful improvement not hitherto conceived in the art, and is, therefore, anticipated neither by prior use nor by prior art patents. If this be true, then claims 7, 15, and 22 are valid and infringed, but on no ground are we able to find claims 16 and 27 valid, because the mere mounting of the latch upon the stiffening member wholly independently of the door plate constitutes nothing new in the art, of a patentable nature, and therefore these two claims must be held to be invalid.

Reverting then, to a consideration of claims 7, 15, and 22, defendant asserts that these claims are invalid because anticipated by the following patents: Inglesby No. 993449, Inglesby, No. 993450, Metcalfe No. 602138, Hahn No. 244889, and Campbell No. 1635398.

Taking up these patents in the order above, we find that Inglesby No. 993449 does not anticipate because there is no curved-end pivoted latch but a fixed hook with a curved-end. Inglesby No. 993450 also does not anticipate because neither its construction nor operation bears any real relation to the claims now under review. It embraces merely one of the very early ideas in the art relating to auxiliary nongravity locking hooks on the car side, which Kadel and Pilcher improved and supplanted by their inventions. So too, Metcalfe No. 602138 bears no real relation to the claims now before us because it relates to

an end-gate for wagons and embraces, among other things, the pivoted hooks on a hinged end-gate section adapted to engage perforated shanks or bolts which extend through openings of the hinged section. However, Hahn patent No. 244889, which embraces a fastener for end-gates of vehicles, discloses a spring-lock bolt or latch with an extended curved-end bracketed on the end-gate and engaging a hook fixed to the side of the vehicle. This patent was issued July 26, 1881. Campbell patent No. 1635398, for which the original application was filed August 26, 1921, embraces the same construction as the claims now under consideration except that the latch projection is not curved. In view of the state of the prior art as disclosed by these early patents, it seems clear that these claims are anticipated by the Campbell patent if not indeed by Wine reissue patent No. 15792, three claims of which are here in suit and found to be valid, because both the Campbell and Wine reissue patent are broad enough to include such slight modification as bending the end of a latch, which had long been a common thing to do in closely related fields, as evidenced by the Hahn patent.

Kadel Patent No. 1743144, in Relation to Defendant's "XLT" Devices.

■ Of this patent only claims 8, 9, 15, and 18 are here involved. Again, this construction embraces a hook affixed to the side of the car, into which engages a movable latch, and the claims relate to the position that the latch occupies with reference to the stiffening member on the door. That is to say, the latch is housed in a bracket, which is mounted upon the outermost face of the stiffening member, with the advantageous result that the latch obtains full support of such member, and stress is thereby relieved. The only essential difference between claims 8 and 15 is that claim 8 relates to any style of door, whether formed of one or two plates, while claim 15 relates to a pair of door plates arranged in spaced connection with the stiffening member. Claims 9 and 18 relate specifically to a particular "U" form of door spreader; that is, one that does not merely have a flat outer surface. We conclude that none of these constructions is essentially different from that embodied in claims 16 and 17 of Kadel patent No. 1738057, and since we have found the latter claims invalid because of the prior art, the same must be true of all four of the claims in the patent now under consideration. In short, since, as is undoubtedly true, the mere substitution of one type of stiffening

member for another type does not constitute patentable invention, the same must be true where there is merely a change with respect to the part of a particular type of stiffening member to which the latch housing member shall be attached. In other words, there must be a point beyond which slight improvements in a rather crowded art cease to be patentable, and such would seem to have been clearly reached in the instant claims.

Kadel Patent No. 1737927, in Relation to Defendant's "XLT" Devices.

■ Here only claim 6 is in suit. This patent is a companion to Kadel patent No. 1743134, which we have just considered. The main point of difference between the two is that this later patent employs a "Z" bar as the stiffening member, the object being that moisture, etc., cannot so readily accumulate in the member, thereby causing deterioration. But, as has already been pointed out, the "Z" type, like numerous other forms of stiffening members, is very old in the art, and the mere substitution of one type for another in devices of this kind does not constitute patentable invention. Therefore, we are forced to the conclusion that claim 6 of this patent is invalid.

Kadel Patent No. 1733736, in Relation to Defendant's "XLT" Devices.

■ Here only claim 8 is involved. It relates to means for reinforcing the side plates of the hopper, the principal feature of the claim residing in the fact that the rear flanges of the plates lie adjacent to the rear edges of the fixed hooks, thereby counteracting the strain. But again, such reinforcing of the hopper sides is old in the art and, therefore, we conclude there is no patentable invention in this minor improvement and that claim 8 is invalid.

Wine Patent No. 1460009, in Relation to Defendant's Drop-door Gondola Car Devices.

■ Claims 1 to 10, inclusive, of this patent are in suit. Broadly stated, they relate to a means whereby the Kadel and Pilcher patent locks are utilized on doors employed upon the drop-bottom gondola type of car, which swing transversely of the car and are disposed in a horizontal position when closed. The claims all relate to the adaptation of the locking device to the car floors or doors, rather than to the form of the device. Claims 1 and 10 are typical and are as follows: "1. In a door device for railway cars, a door hinged to the car body, with the door pintles arranged longitudinally of the car, a pair of

door-supporting members pivoted upon the car body and arranged to cooperatively engage portions of the door to retain the same in closed position, the said members being disposed in opposite directions with respect to each other and being arranged to cooperate between the door and the car body in such manner that one of said members will arrest the door against slippage longitudinally of the car, in one direction and the other against such slippage in the opposite direction." "10. In a door device for railway cars, a door hinged to the car body with the door pintles arranged longitudinally of the car, said door being provided with a plurality of portions projecting from the edge opposite said pintles, and means for retaining said door in closed position, said means comprising a pair of independently movable gravity actuated members, said members being adapted when in engagement with said projecting portions of said door to hold the latter from longitudinal movement with respect to said car, and separate means cooperating with each of said members for retaining the same in engaging position."

The several claims vary in the extent to which details of construction are specified. For example, it is to be noted that some of the claims do not specially refer to the means, namely, the "dogs" for holding the pivoted hooks in place. Claim 3 provides that a bracket shall be near each end of the door, which appears not to be of special importance. Claim 4 provides specifically that the hooks shall swing substantially at right angles to the swing of the door as well as in opposite directions from each other. Claim 5 embraces apparently no distinguishing features except that the brackets or stiffening member shall extend outwardly beneath the side of the car. Claim 6 provides for independent movement of the hooks in opposite directions to each other. Claim 7 provides for a plurality of arms (brackets or stiffening members), which shall be intermediate to the side edges of the car body. Lastly, claims 8, 9, and 10 embody general groupings of the various elements.

We conclude that all of these claims are valid because they embrace a new adaptation of old devices to the drop-bottom gondola type of car not heretofore disclosed by prior public use or prior patents. Defendant asserts that Stucki patent No. 826809 issued July 24, 1906, does anticipate but we do not so find. The gist of defendant's contention seems to be that since the Stucki patent discloses the same method for extending the channel bars as is necessary in Wine patent No. 1460009, the latter discloses nothing new because, as is alleged, the gravity locks or hooks are themselves not new in the art and anyone might acquire them and with ordinary mechanical knowledge and skill, apply them to the structure of the Stucki patent, thereby producing the same structure contemplated by Wine patent No. 1460009. But the fact remains that the combination of known elements to produce the particular result of the Wine patent had not previously been conceived, and while admittedly but an extension of the application of Kadel and Pilcher patent No. 1268725, it nevertheless represents something new and useful. Indeed the Stucki patent might be distinguished upon an equally fundamental ground, namely, that the basic idea of the invention which it covers is built around a winding mechanism.

Respecting the question of infringement, one of defendant's devices is virtually identical in construction with the patented device, and therefore, the latter is infringed.

Wine Patent No. 1455694, in Relation to Defendant's Drop-door Gondola Car Devices.

Here only claim 11 is involved, and the only new feature therein is that which relates to special means for forcing to a completely closed position a door of the style embodied in the preceding patent, namely, a door used upon the drop-bottom gondola type of car by means of a fulcrum bracket affixed to the side of the car. One of the Baltimore & Ohio devices in suit embraces a fulcrum bracket identical with that embodied in claim 11, except that the hole for the bar is made in the side of the car itself instead of in a separate bracket or plate affixed to the side of the car. In short, the Baltimore & Ohio device is in effect an improvement upon claim 11 because of stronger construction. Canadian patent No. 136498, issued October 31, 1911, is pleaded by defendant in anticipation of this claim. Claim 27 of that patent, which is typical of a number of others embracing the fulcrum device, reads as follows: "In a dump car the combination with a dump car of a device secured to the car and adapted to serve as a fulcrum for a removable manually operable lever whereby the door is closed, such device being formed to present a loop through which the said lever may be inserted substantially as described." This loop or "U" shaped strap is fixed to the side of the car to which the door is hinged and extends downwardly. Thus it appears to be an equivalent of the fulcrum device of the patent in suit, and the slight change in construction

does not appear to be sufficient to warrant a declaration of patentable invention, particularly in view of the common, as well as very early, adaptation of the fulcrum idea as an auxiliary to the closing of any device of this or a related character.

Wine Patent No. 1486210, in Relation to Defendant's Drop-door Gondola Car Devices.

 Here claims 1 and 4 only are involved. They relate primarily to the form and construction of the door stiffening member and particularly to the outermost end of such member. There is no substantial difference between the two claims. For the reasons heretofore given in the course of our consideration of Wine patents Nos. 1743144, 1737927, and 1733736, we conclude that this construction does not embody sufficient novelty to justify the issuance of a patent, although it may be noted that were the contrary true, there may be sufficient similitude in the alleged infringing device of the defendant to justify a conclusion that it amounts to an infringement. It is to be noted that in the Baltimore & Ohio device, the load is carried on the lower flange of the stiffening member while in the patent in suit, it is carried on the top thereof and the construction of the stiffening member is somewhat, but not radically, different.

Summarized, our conclusions with respect to the various patents are as follows: Kadel and Pilcher patent No. 1268725 is found to be valid as to both claims in suit but not infringed as to either of them. Kadel patent No. 1434953 is found to be valid as to the only claim in suit, claim 2, and infringed. Wine reissue patent No. 15792 is found to be valid and infringed as to all three claims in suit. Wine patent No. 1431499 is found to be invalid as to the only claim in suit, claim 1. Kadel patent No. 1738057 is found to be invalid as to all five claims in suit. Kadel patent No. 1743144 is found to be invalid as to all four claims in suit. Kadel patent No. 1737927 is found to be invalid as to the only claim in suit, claim 6. Kadel patent No. 1733736 is found to be invalid as to the one claim in suit, claim 8. Wine patent No. 1460009 is found to be valid and infringed as to all ten claims in suit. Wine patent No. 1455694 is found to be invalid as to the only claim in suit, claim 11, and lastly, Wine patent No. 1486210 is found to be invalid as to the two claims in suit.

A decree will be signed in accordance with this opinion, granting injunctive relief with respect to those patents found to have been infringed, and also reference to a master for an accounting.