## CLANCY v. DE JAHN.

Court of Customs and Patent Appeals.
December 19, 1929.

Patent Appeal No. 2172.

Perley H. Plant, of Providence, R. I., for appellant.

Hans v. Briesen, of New York City, for appellee.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

LENROOT, J. This is an appeal from a decision of the Commissioner of Patents in an interference proceeding, in which priority of invention was awarded to appellee by all of the interference tribunals of the Patent Office.

The invention in controversy is a process of purifying the nitrogen-hydrogen gas mixture in the synthetic production of ammonia. It is unnecessary to detail the various successive processes by which synthetic ammonia is produced. Most of them constitute what is known as the Haber process, for which a United States patent was granted in 1916. The gist of the invention here in issue consists broadly in passing the gases to be synthesized into contact with liquid anhydrous ammonia before said gases enter the catalyst chamber. This process is new and constitutes invention, each party hereto claiming to be the inventor and entitled to a patent thereon. An interference was duly declared by the Patent Office.

There are eighteen counts in the interference, of which the following are typical:

"2. In a process of purifying gases for use in the synthesis of ammonia the steps comprising, passing the elemental gases into contact with one or more agents for removing therefrom substances injuriously affecting an ammonia synthesis catalyst, and then passing the gases through substantially anhydrous liquid ammonia at a low temperature to remove traces of moisture therefrom prior to the effectuation of the synthesizing operation."

"6. In conditioning gas to render it suitable for use in catalytic ammonia synthesis, that improvement which comprises bringing gas which is to participate in said synthesis into effective contact with liquefied ammonia."

"15. The process of preparing a gas mixture containing nitrogen and hydrogen in the relation of 1:3, subjecting said mixture to pressure and under said pressure removing the major part of the constituents of the gases other than nitrogen and hydrogen, and then, while the gases still contain traces of water impurities and of carbon compound, but no ammonia catalytically produced from said gases, introducing said gases into the stream of gas which has passed through an ammonia catalyst, then passing the thus compounded mixed gases through an ammonia liquefier and leading the gases from said liquefier through the catalyst to produce the stream of catalyzed gases to which additional quantities of the gas mixture first referred to are constantly introduced between the catalyst and the liquefier."

The application of appellant, who is a chemist, was filed on April 16, 1921; appellee filed May 12, 1923. Appellant therefore is the senior party, and the burden was upon appellee to establish by a preponderance of evidence a date of conception prior to that of appellant and a reduction to practice thereafter with diligence from the time appellant entered the field.

Both parties filed preliminary statements, but appellee alone introduced testimony.

The three tribunals of the Patent Office, namely, the Examiner of Interferences, Examiners in Chief, and the Commissioner, united in finding the following: That appellant's filing date of April 16, 1921, is the date of his conception, and his application was a constructive reduction to practice; that appellee established a conception of the invention at least as early as April 15, 1920, reduced it to practice in August, 1921, and was diligent in so doing; that priority of invention should be awarded to appellee, the junior party.

Unless material error is shown, the findings of fact of the three tribunals of the Patent Office, being unanimous, will not be disturbed by this court. Greenawalt v. Dwight, 49 App. D. C. 82, 258 F. 982, and cases cited.

Appellant does not deny that appellee was the first to conceive the invention, but he contends that appellee was not diligent in reducing it to practice, and further that the proof does not show that it has ever been reduced to practice by appellee or his assignee, the Atmospheric Nitrogen Corporation, of which appellee was an employee.

The evidence fully establishes that the invention was reduced to practice by appellee and his assignee on or about August 10, 1921, and this is so clear that it requires no discussion.

Therefore the only question for us to consider is whether the record contains proof of diligence in reducing his conception to practice.

The evidence shows that appellee is a chemist, and conceived the invention here in issue in December, 1919, while in the employ of the General Chemical Company; that about that time said company organized the Atmospheric Nitrogen Corporation and appellee entered its employ, and has so continued to the present time; that, while so employed, and some time in January, 1920, he disclosed his invention to Dr. B. C. Hesse, who was also a chemist, in the employ of the General Chemical Company as a specialist in chemical patent matters. Said Hesse testified that he was instructed by his superiors in the General Chemical Company to cooperate in the ammonia situation just as though the Atmospheric Nitrogen Corporation was the General Chemical Company. Appellee further testified that, in making such disclosure to Dr. Hesse he prepared a sketch of his invention, which Dr. Hesse dated and signed, which was the usual procedure in such cases. Said sketch was offered

in evidence and received. Appellee testified also that some time in 1919 the General Chemical Company decided to construct a plant for the manufacture of synthetic ammonia, and the Atmospheric Nitrogen Corporation was formed, as above stated, for the purpose of carrying on the synthetic ammonia branch of the chemical business; that actual construction of the plant was commenced about June 1, 1920, at Syracuse, N. Y.; that, from the time that construction began until its completion, the process conceived by appellee was made a part of the plans and designs for the construction of said plant; that the construction of said plant proceeded with very great expedition, and it was completed in August, 1921; that there was expended in its construction approximately $4,000,000; that in July, 1920, appellee secured a patent for a process, the object of which was the same as the object of the process here in issue; that said process is known as the sodium amide process; that, in the construction of said plant at Syracuse, apparatus was installed for the use of said process, but it was never utilized or connected up, and the only purpose of its installation was to have available another means for purifying the gases if the process here in issue should not prove successful; that, the process here involved having proved successful, the said sodium amide process was never utilized in said plant. Appellee further testified that the General Chemical Company maintained a laboratory at Laurel Hill, N. Y., from 1919 until June, 1921, for the purpose of testing catalysts; that this laboratory was available to appellee during all of the time here in question. Appellee testified that it would have been very expensive and complicated to have installed the necessary apparatus at the Laurel Hill laboratory to test the process here in issue; that, among other things, it would have been necessary to install a small refrigerating machine to keep the liquid ammonia purifier cold; and that the fire department of New York City insisted that such a machine would have to be installed in a separate fireproof brick building, which would have had to be erected.

There is no testimony as to the time that would have been required after April 16, 1921, to have equipped the Laurel Hill laboratory for the purpose of testing the process here in issue. Appellee also testified that a proper test could not have been made in any event in this laboratory, and that it required the production of nitrogen-hydrogen gases upon a large scale to make a proper test,

which could only be done at the plant being erected at Syracuse.

Appellant contends that the Commissioner and other tribunals of the Patent Office entirely misconceived the facts in the case. He points out that the appellee testified that one of the great advantages of his process was that it required no additional apparatus or chemical to put it into operation, but merely required a connection subjecting the gases to treatment with ammonia in its liquified state immediately prior to the introduction of the gases into the ammonia catalyst, whereas the Commissioner found that diligence was evidenced by the installation of cold transferors and other devices for the purpose of carrying out the process of the invention in issue as early as April 23, 1921. We may assume that the Commissioner was in error in this respect, and that the only change that was necessary to carry out the process here in issue in said Syracuse plant was the making of connections in a different way than would have been made if said process was not a part of the plant. The fact remains, however, that the plans did provide for such special connections for carrying out the said process long before appellant's conception of the invention or his constructive reduction to practice. If the plans for the construction of the Syracuse plant were being carried out in good faith to include the process here in issue, and they clearly were, we hold that this constitutes diligence, unless appellee or his assignee could have tested the process in some other way subsequent to April 16, 1921, and substantially earlier than August 10, 1921. Appellee testified that this could not have been done. With regard to appellant's contention that the test could have been made at the Laurel Hill laboratory, we must accept as a fact that, granting that this were so, it could only have been done by the installation of additional apparatus and the erection of a new brick building. Inasmuch as appellee was chargeable with diligence only from April 16, 1921, we cannot say that the construction and apparatus necessary in the Laurel Hill laboratory could have been completed and installed substantially earlier than August 10, 1921, when the process was reduced to practice at Syracuse.

Appellee was chargeable with diligence for only a period of a little less than four months. We think the evidence establishes that diligence was exercised by appellee and his assignee.

Appellant also makes a point that appellee testified that he had never disclosed his invention to any of the officers of his assignee, and therefore the assignee knew nothing about the process, and that the conduct of the assignee is controlling upon the question of diligence; that, inasmuch as appellee's assignee had decided upon the erection of the plant at Syracuse prior to the conception of the invention by appellee and the plant would have been constructed if the invention in issue had never been made, lack of diligence by appellee's assignee has been shown. The answer to this contention is that the disclosure was made to the chemical specialist in patents, acting for the assignee; that the plans did provide, from a date prior to appellant's conception, for the use of appellee's process in the plant to be constructed; and the presumption is that the officers of the assignee did know what was contained in the plans which had been adopted by them.

The rule is that, as between one who has actually reduced an invention to practice and one who has only constructively so reduced it by filing an application, indulgence should be extended to him who actually reduced it in good faith. Laas v. Scott (C. C.) 161 F. 122. We do not think it necessary to apply that rule in this case, for we think that the period of less than four months in which diligence was required to be exercised was not an unreasonable time in which to reduce the invention to practice under the circumstances here shown.

The decision of the Commissioner is affirmed.

Affirmed.