**JANETTE v. FOLDS et al.**
Patent Appeal No. 2322.

Court of Customs and Patent Appeals.
March 3, 1930.

See, also, 38 F.(2d) 364.

Chas. D. Davis, of Washington, D. C., Glenn S. Noble, of Chicago, Ill. (Mr. Noble, orally), for appellant.

Robt. L. Ames and Bertram W. Coltman, both of Chicago, Ill. (Mr. Coltman, orally), for appellees.

Before GRAHAM, Presiding Judge, and BLAND, HATFIELD, GARRETT, and LENROOT, Associate Judges.

GRAHAM, Presiding Judge.

On May 15, 1925, George R. Folds and Lawrence M. Persons filed their joint application, serial No. 30,578, for a patent on a combined safety device and resetting mechanism relating to liquid fuel burning systems. The device, as set forth in the application, is, in brief, a fuel pump operated by an electric motor. The motor circuit is controlled by a float controlled switch mechanism. This mechanism consists of three floats within a cylindrical receptacle. The fuel is pumped into and through this receptacle, where it rises to a predetermined level controlled by a float operating an electric switch. When the fluid reaches such a level as will depress the middle float, the switch closes and the motor starts; the receptacle will then fill until the fluid reaches a high level therein, when another float rises and breaks the electric circuit, stopping the pump. The mechanism thus ordinarily operates with these two floats, alternatively closing and opening the electric circuit. Another lower float is provided, which, in case a leak or break in the pipe line below the pump drains the receptacle, operates to open the circuit, and stop the pump.

This application also disclosed a similar operation to be performed by a single float and switch.

On April 24, 1925, John T. Janette had filed his application, serial No. 25,530, for a similar device to be controlled by one float.

On December 7, 1925, an interference was declared between said copending applications, the application of one Albert B. Frenier for an auxiliary control device being also joined in said interference. Frenier filed his application December 12, 1924, serial No. 755,586, but as he took no testimony and filed no brief, he was restricted by the Examiner to his filing date for conception and reduction to practice. No appeal has been taken by him from such decision.

The counts in this interference are three, and are as follows:

"1. In a float controlled liquid feeding apparatus, including a pump, a motor, an electric circuit for said motor, a float chamber, and a float adapted to control the opening and closing of said circuit at predetermined high and low levels of the liquid in said float chamber, and normally inoperative means for opening said circuit when the liquid in said float chamber falls below the said low level.

"2. A pumping apparatus for pumping liquid into a receptacle, provided with controlling means whereby the pump will be stopped when the liquid reaches a predetermined upper level, will be started when the liquid reaches a predetermined intermediate level and will be stopped when the liquid reaches a predetermined lower level.

"3. Float actuated means for a pump, adapted to stop the pump when the liquid in the float chamber reaches an upper level,

to start the pump when the liquid reaches an intermediate level, and to stop the pump when the liquid reaches a lower level."

In their preliminary statement, Folds and Persons claim they conceived and made the first disclosure and drawings of the invention in question in January, 1924; that they made a written description thereof in May, 1924, and in the same month made a full-sized operable device and successfully operated the same; that since that time they have made and sold a large number of the same. Janette claims, in his second amended statement, that he conceived the invention in February, 1924, made drawings of portions of it in June, 1924, and a complete drawing in November, 1924, a written description in December, 1924, explained the invention to others on or about February 1, 1924, embodied his invention in a full-sized device in February, 1924, and at that time successfully operated the same, and that since that time he has manufactured and sold a large number thereof.

In support of the issues, both parties took testimony and a very large record is the result. The Examiner of Interferences, after an apparently very careful examination of the record, awarded priority to the junior party, Folds and Persons. On appeal, after a like exhaustive examination and discussion of the testimony, the Board of Appeals came to the same conclusion. These decisions, concurring, will not be disturbed unless manifestly wrong. Beidler v. Caps, 36 F.(2d) 122; Clancy v. DeJahn, 36 F.(2d) 131.

The facts, as disclosed by the record made by the junior party, Folds and Persons, are as follows: George R. Folds was the manager of, and Lawrence M. Persons was employed as an engineer by, the Cook Electric Company of Chicago, in 1923. During 1922 this company had given its attention to an automatic fuel supply system for automobiles. This proved impractical and thereupon the company engaged in the production of a pump known as "Cook Type C," for use in connection with fuel oil burner systems. This pump was automatically controlled by a single float so arranged in a cylindrical receptacle that it closed an electric circuit and started the pump when at low level and opened it and stopped the pump at high level. These pumps were sold in large numbers in the latter part of 1923.

The party Albert B. Frenier was at that time connected with the American Nokol

Company. In the fall of 1923, and continuing into June, 1924, Folds and Persons were in communication with Frenier, endeavoring to interest his company in their type of automatic pump. Freiner visited the Cook plant April 25, 1924, about this matter, and at that time there was a discussion about a device to prevent flooding of a basement with oil in case of leakage of fuel from the feed pipes. Folds and Persons began to discuss this problem in the latter part of 1923 and first part of 1924, with various persons, among whom were J. S. Baker and Albert Wilkins. In January or February, 1924, Folds claims he prepared a rough sketch showing a two-float mechanism which would shut off the motor in case of a break or leak, draining the oil from the auxiliary tank. Early in 1924, Folds and Persons also took up and discussed with the Underwriters' Laboratories this problem.

The type C pump was submitted to the Underwriters' Laboratories on April 9, 1924. At about the same time Folds and Persons set up and operated a two-float structure. This was submitted to the Underwriters' Laboratories soon after July 22, 1924, and about three or four weeks thereafter a three-float structure, identical with that described in the application of Folds and Persons herein, was also submitted. In the last of September or first of October, 1924, Folds had an interview with Frenier and he testifies that the three-float device had been submitted to the Underwriters' Laboratories before that time.

On September 29, 1924, a complete sketch of the three-float device in question was made and delivered to Folds' and Persons' attorney. During November, 1924, Folds and Persons caused to be installed in the home of Mr. Pierce, then the president of the Underwriters' Laboratories, one of their three-float fuel pumps. This device operated successfully for several months, until it was removed to give way to a single float device of later design. The record seems to indicate that reasonable diligence was exercised after this device was completed and reduced to practice, until application for patent was made. These facts seem to be reasonably well established by the testimony of many witnesses.

Janette testifies, in his own behalf, that he is president and treasurer of the Janette Manufacturing Company and of the Monroe Machine Tool Company; that, on July 30, 1912, he patented a two position automatic control for motor driven air compres-

sors. This patent is No. 1,033,900, and has but two functions, starting and stopping. Thereafter, in 1912, he states he built a three point switch, which was so constructed that if a hose blew off, creating an abnormal low pressure, the pump would stop. All these devices were used, chiefly, on beer pumps. He states that about twenty-five of these devices were made and sold. One of them has been introduced in evidence and shows that the switch was operated, not by a float, but by a diaphragm. He did not seek for nor obtain any patent on this three point modification of his original control.

In 1913 Janette discontinued the three position control by equipping his devices with a set screw which prevented the switch from going into the third position. He states that it was still possible to operate the third position by adjusting the set screw, but the evidence shows that they were never so adjusted by him. In February, 1924, he claims to have conceived the idea of an automatic fuel oil control to operate by the same type of switch and a sample of the device was offered. It also is equipped with a set screw to prevent the third position and whether it was to be operated with a float or not, Janette does not disclose.

Nothing further was done by him until in June, 1924, when he says he developed the pump to operate by a float. In September, 1924, he states Mr. Frenier told him about a device on an oil fuel pump to stop the flow when a break or leak occurred in the feed pipe. Thereupon he states he proceeded to develop, in September, a quick break switch at an abnormally low level. An example of this device is offered as Exhibit 4, and is the first exhibit offered by him, except his original diaphragm beer pump control, which did not have a set screw to prevent the third position. In his experiments with these devices, Janette testifies that he used a pail of water and a float made of a gallon pail. Up until and including June, 1924, when he says he made his Exhibit 3, Janette was using his set screw to prevent his switch from taking the third position.

Janette states further that he first sold devices such as his Exhibit 4 in December, 1924, although his circulars advertising the same were not issued until the latter part of 1925. Exhibit 4 was submitted to the Underwriters' Laboratories on March 31, 1925.

In support of his claims Janette also called the witnesses, Axel Anderson and Carl Norman, employees of Janette's company.

These witnesses corroborated Janette to some degree about his Exhibit No. 2, said to have been prepared in February, 1924, but neither of them saw the device fully completed or in operation. Norman also states he worked on Exhibits 3 and 4 in the latter part of August, 1924. The testimony of these witnesses is not satisfactory and fails to corroborate, definitely, the claims of Janette that his float-operated devices were fully completed, tested, and operated prior to his date of filing. If there was not such corroboration, Janette could not succeed. Winslow v. Austin, 14 App. D. C. 137.

From a consideration of this testimony we conclude that the Board of Appeals properly found Folds and Persons to be entitled to priority, and that Janette should be confined to his filing date, April 24, 1925, for conception and reduction to practice. In the first and third counts where the float mechanism is specifically called for, it is quite obvious that they conceived, disclosed, and reduced to successful practice the mechanism in question before Janette had completely disclosed the same. By his own admission, he did not attempt to construct a float-controlled third position switch until after he had talked with Frenier, who, in turn, doubtless received his information on the subject from Folds and Persons. His earlier devices were not float controlled, but operated with a diaphragm, which, in our view of the matter, was not an anticipation of Folds and Persons conception as set out in these counts.

Count 2 is probably broad enough to include Janette's three point switch as shown in his exhibits one to three, inclusive. There is nothing in the record, however, to indicate that Janette ever had any conception of any such function or use of the third emergency position of his switch as is here involved until after he had talked to Frenier and until after Folds and Persons had entered the field. He claimed nothing for it in his original application for patent and did not describe it therein. It appears, therefore, that the possible operation of the switch in a third position was accidental. Mere accidental practice does not constitute reduction to practice. Thompson v. Smith, 33 App. D. C. 284; Clough v. Gilbert & Barker Mfg. Co., 106 U. S. 166, 174, 1 S. Ct. 188, 27 L. Ed. 134; Tilghman v. Proctor, 102 U. S. 707, 26 L. Ed. 279.

We have been favored with an elaborate and well-prepared brief by counsel for appellee on a question raised on oral argument

relative to the duty or right of this court to pass upon the patentability of a device in an interference proceeding where such device is involved. This is quite helpful to the court in its work. However, inasmuch as no issue of patentability is made on this record, we refrain from discussing the subject here.

The decision of the Board of Appeals is affirmed.

Affirmed.