## WHITEHEAD v. DIAMOND.
### Patent Appeals No. 3963.

Court of Customs and Patent Appeals.
June 27, 1938.

I. Seltzer and C. W. Levinson, both of New York City (Marcellus C. Simmons, of New York City, of counsel), for appellant.

Howson & Howson, of New York City (Hubert A. Howson, of New York City, William A. Smith, Jr., of Washington, D. C., and Richard S. Shreve, Jr., of New York City, of counsel), for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal from a decision of the Board of Appeals of the United States Patent Office affirming a decision of the Examiner of Interferences which awarded priority of invention of the subject matter in issue to appellee.

The counts of the interference, which originated in the patent of appellee, are 1 to 4, inclusive, and read as follows:

"1. An artificial thread consisting of an organic ester of cellulose and a small proportion of glucose pentacetate.

"2. An artificial thread consisting of cellulose acetate and a small proportion of glucose pentacetate.

"3. The process of producing matt threads by treating with a soap solution at or near the boiling point threads consisting of an organic ester of cellulose and a small proportion of glucose pentacetate.

"4. The process of producing matt threads by treating with a soap solution at or near the boiling point threads consisting of cellulose acetate and a small proportion of glucose pentacetate."

The interference involves an application for a patent, serial No. 623,608, of appellant, filed July 20, 1932, and an application, serial No. 750,025, for a reissue of patent No. 1,891,146 of appellee, filed October 25, 1934. Appellee filed his original application for his said patent on March 10, 1931, reciting therein that he had filed a British application for the same invention. A certified copy of said British application was filed in this proceeding, and found to disclose the subject matter involved, and the Examiner of Interferences accordingly held that appellee is entitled to the date of May 5, 1930—the date of filing the British application—for conception of the invention and its constructive reduction to practice.

Appellant alleged in his preliminary statement that he conceived the invention as early as the first part of August 1929, disclosed it to others as early as October 1929, and that he made his first written description of the invention and reduced it to practice as early as the middle of November 1929.

Appellant is the junior party and had the burden of proving by a preponderance of evidence that he reduced the invention of the counts to practice prior to May 5, 1930.

The Examiner of Interferences described the subject matter of the counts as follows: ·

"This interference has for its issue an artificial silk thread and a process for treating such threads. The thread is described as consisting of cellulose acetate and a small proportion of glucose pentacetate. While not so stated specifically it is generally conceded that the distinguishing characteristic of the thread is that it is delusterable. The issue likewise includes the process of delustering the threads which consists of treating them with a soap solution at or near the boiling point."

Since the entire record clearly indicates that the invention in controversy is the production of a delusterable yarn, the statement of the Examiner of Interferences that "it is generally conceded that the distinguishing characteristic of the thread is that it is delusterable," is considered to be proper. Therefore, in deciding as to whether or not appellant conceived the invention and reduced it to practice, we will consider the counts as calling for threads of that character.

The "process of producing matt threads," as set forth in counts 3 and 4, is a process for delustering or removing the sheen from the threads.

Appellant only took testimony. The record presented on his behalf is made up of the testimony of appellant and that of two of his laboratory assistants, together with inter-office reports and communications.

Appellant is a research chemist employed by Celanese Corporation of America, his assignee. He testified that he conceived the subject matter of the counts sometime in August 1929, and in August and September of that year studied methods of preparation of glucose pentacetate and spinning solutions of cellulose acetate. He stated that during that time, in his own private laboratory and in his research laboratory at the factory of his employer, he "spun small charges comprising a few pounds of dope [spinning material], actually producing several bobbins of yarn and actually tested the behavior of that yarn in scouring and similar baths, also knitted on a ladies' hose machine several yards of tubular fabric, similarly tested such fabric," etc. He stated that he made the first small

charges, using glucose pentacetate in spinning solutions in the said research laboratory early in September 1929, and larger trials early in October 1929.

The first evidence in writing, Exhibit A, which was offered to support his above-mentioned testimony, is a report dated October 22, 1929, signed by appellant and addressed to the New York office of his company. We have examined the exhibit with care, and, while it does show that appellant and his associates were experimenting with glucose pentacetate in a spinning solution, it does not disclose conception of the subject matter of the counts, and is apparently directed to the result of tests and experiments for an entirely different purpose.

Exhibits B and C, signed by appellant and bearing dates of November 24 and 18, 1929, respectively, are each entitled "Record of Instructions and Progress of Research Work." Exhibit B contains appellant's instructions to his assistant Brenneman to prepare a charge of dope, study the effect of a small amount of "Dextrose Penta Acetate on draw-down of Normal dope," and to "Spin all the extra yarn you can." Exhibit C contains similar instructions to his assistant Sitzler to "study effect of adding a high boiling solvent, such as Triacetin, on draw-down of a Glucose pentacetate dope," and to arrange spinning with Mr. Brenneman.

The examiner held that even though Exhibits B and C indicate the use of a small percentage of glucose pentacetate, and that yarn was to be spun from the resulting mixtures, they do not show conception of the subject matter of the counts for the reasons that no information is given as to the percentages of the glucose pentacetate or as to the purposes intended.

Appellant was accorded the date of conception as of December 1929, but both tribunals of the Patent Office held that his work in the fall of 1929 amounted to no more than an abandoned experiment.

The date of conception claimed by appellant is not urged in his brief which states that—

"The date of conception need not be seriously argued as the question here involved is—did the work of Whitehead in the latter part of the year 1929 constitute a reduction to practice of the counts when said counts are interpreted according to the expressed limitations? The Board of Appeals held that the work done by Whitehead and his associates at this period of time amounted to an abandoned experiment and not a reduction to practice. It is respectfully submitted that the work done by Whitehead and his associates in 1929 amounted to a reduction to practice of the subject matter of the counts."

We are of opinion that the work shown by Exhibits A, B, and C does not show a reduction to practice. The exhibits are indicative of nothing more than experimental tests on dope with some quantities of glucose pentacetate added. The fact that some yarn was made from the materials used in the said tests and spun is no proof that the yarn was the character of the thread intended to be called for in the counts, even as understood by appellant who stated in his direct examination that he understood the invention in controversy to be the "Production of a delusterable yarn."

Appellant lays great stress on Exhibit D, dated December 2, 1929. It is a report which appears to set out in lengthy detail all of the activities of appellant and his associates with respect to the use of glucose pentacetate in a spinning mixture.

The Examiner of Interferences has, we think, fairly analyzed it, together with the oral evidence concerning the work and results stated in it, as follows:

"In a subsequent report dated December 2, 1929 which appears to have been the principal report on the glucose pentacetate research, the corresponding data on delustering shows that yarns of the same compositions which had been allowed to age for ten days showed very different characteristics. Yarn containing 10% of glucose pentacetate then showed a high degree of deluster when treated with hot soap solution. A note accompanying this data states that the memorandum report of November 19, 1929 was based on data for freshly spun yarn. The report bears the signatures of Whitehead and Sitzler who both testified as to the experiments by which the data was determined and to the preparation of the report.

"It is the contention of the party Whitehead that Exhibit D and the testimony with respect thereto clearly establishes an actual reduction to practice of the invention of each of the counts. This evidence shows that thread was spun from a solution of

cellulose acetate containing a small proportion of glucose pentacetate and that under certain conditions this thread might be delustered. However, the same evidence also shows that thread having the same composition was unusually resistant to delustering. The sole apparent difference in condition of the thread was its age. The record is entirely silent as to what was done with this particular yarn which was delusterable. There is an intimation that it was knit into tubular fabric but the sole documentary evidence relating to knitting of experimental yarns was specific to the 2% glucose pentacetate yarn. According to Exhibit D this 2% yarn delustered decidedly less than the normal cellulose acetate yarn.

"No laboratory records have been included in the record which show that a glucose pentacetate yarn delustered. Exhibit D appears to be a summary of various experiments but the data set forth shows delustering of the 10% yarn under only one set of conditions. A very material change in the characteristics of the 10% yarn appears to have resulted from only ten days aging. The record is silent as to the effect of further aging on the yarn and it is left to conjecture whether at the end of ten days the yarn had assumed a stable condition having permanent delusterable characteristics. No information appears as to the effect of age on the physical characteristics of the yarns. The one sample of fabric knit from experimental yarn was returned with the comment that it showed stitch distortion and pinholes. While Whitehead testified that he considered the yarn produced by these experiments to be of a commercially satisfactory character, no samples were submitted in evidence and the other witnesses either had no recollection of the character of the yarns or refrained from testifying with respect thereto."

We have given Exhibit D and the testimony relating thereto careful consideration, but we feel that we must agree with the tribunals below in holding that they do not establish a reduction to practice, although they may establish conception in December 1929.

Yarns made of the materials called for in the counts apparently were made in the tests and resulted in a delustered thread under only one set of conditions. Appellant was not corroborated in his statement that the results of these tests were satisfactory.

The witness Sitzler testified that all he did was to run experimental tests on yarn spun by someone else.

The witness Brenneman merely said he spun the yarn turned over to Sitzler. No laboratory records are in evidence which show that the threads of the counts were delustered.

In view of the record, it is our opinion that appellant had not passed from the stage of experimentation in December 1929.

Subsequent to December 1929, it appears that nothing further was done with the glucose pentacetate spinning mixture, and no steps were taken by appellant to file an application for patent until more than two and one-half years later. The Board of Appeals was satisfied that appellant was in doubt as to the practical effect of the glucose acetate on delustering. They quoted from Exhibit D the following excerpts:

"The yarn, however, appears to delustre readily and lose its Glucose Ester readily in slightly alkaline baths such as baths containing salts very slightly alkaline by hydrolysis, eg, Na. Citrate which salt dissolves the Glucose Ester in aqueous solution. This property of the yarn would render its general application inadvisable.

" * * * We suggest holding this up until we are able to complete our work on Surface Tension, when we can possibly make broader claims, including Resins as having similar effects."

Since Exhibit D, quoted by the board, also stated, with relation to the defect in the yarn that "We propose to continue this work, studying the effect of addition of small amounts of very low viscosity C. A. [cellulose acetate] to overcome these defects," it seems that appellant was still in the realm of experimental uncertainty as far as reduction to practice is concerned.

During the time that the experiment was laid aside, the British patent of appellee issued and notice of its issuance was published in trade journals in 1931 and 1932. Whether or not appellant or those associated with him saw them is immaterial. Under the law they are charged with notice and in any event we are of opinion that there was no reduction to practice; that the activities of appellant never passed

an incomplete stage of experimentation; and that the experiment was laid aside and abandoned.

The decision of the Board of Appeals is, accordingly, affirmed.

Affirmed.