29 C.C.P.A. (Patents)

## TINNERMAN v. KOST.

### Patent Appeal No. 4616.

Court of Customs and Patent Appeals.
July 6, 1942.

Albert R. Teare, of Cleveland, Ohio (Bates, Teare & McBean, of Cleveland, Ohio, of counsel), for appellant.

James P. Burns, of Washington, D. C., and Malcolm W. Fraser, of Toledo, Ohio, for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

This is an appeal, in an interference proceeding, wherein the Board of Interference Examiners of the United States Patent Office awarded priority of invention of the subject matter of the five counts involved to appellee Kost.

The interference arose between an application of appellant for a patent on a "Fastening Device", Serial No. 263,874, filed March 24, 1939, and an application of appellee for a patent for a "Fastener", Serial No. 230,563, filed September 19, 1938. Appellant is the junior party and must sustain his proof of priority by a preponderance of the evidence.

The counts in issue read as follows:

"1. A fastener for securing a structure provided with a hole through which a screw or the like extends, comprising a unitary substantially C-shaped strip of sheet material having the arms thereof disposed in superposed relation, a thread engaging portion formed in one arm and a tongue struck out of the material in the region of said thread-engaging portion, said tongue being adapted to enter the hole in the structure thereby to hold the fastener against displacement.

"2. A fastener for securing a structure provided with a hole through which a screw or the like extends, comprising a unitary substantially C-shaped strip of sheet material having the arms thereof disposed in superposed relation, one arm being apertured to enable the shank of a threaded connecting member to pass therethrough, a thread engaging portion pressed out of the other arm substantially in alignment with the aperture in the first arm, and a tongue struck out of the material in the region of said thread engaging portion and projecting toward the other arm for entering the hole in the structure for retaining the fastener approximately in position.

"3. A fastener comprising a unitary strip of sheet material provided with a deformed protuberance for engaging a threaded shank, and a tongue struck out of the sheet material forming the protuberance and disposed in a direction opposite to the protuberance for extending into a shank-receiving opening of a part to be joined beneath the shank-engaging protuberance for preventing displacement of the fastener.

"4. A fastener comprising a unitary strip of sheet material provided with a deformed protuberance for engaging a threaded shank, and a tongue struck out of a wall of the protuberance and extending inwardly therefrom, said tongue being adapted to extend into a shank receiving opening of a part to be joined beneath the shank-engaging protuberance for holding the fastener against displacement.

"5. A fastener for a panel formed with a hole through which a screw or the like extends, comprising a sheet metal piece, a shank-engaging portion formed in said piece adapted to align with the hole, and a projection on the sheet metal in the region of said shank-engaging portion to enter the hole in the panel therebeneath through which the shank extends for engagement with said shank-engaging portion, whereby the projection holds the fastener against displacement laterally with respect to the hole."

The invention relates to fasteners of sheet material adapted for use in holding two or more flat articles together. It is used in a "blind location", that is, where an operator cannot readily hold a nut while inserting a bolt or screw. The device of the invention is of a laterally elongated C-shape, the top arm of which is outwardly protuberantly deformed with an aperture on the top of the protuberance. The edges of the aperture are formed for threadedly engaging the shank of a screw threaded member, and there are means for holding the device in the cooperating aperture of the article to be fastened.

In his preliminary statement, appellant alleged the date of conception of the invention defined in counts 1, 3 and 5 to be February 22, 1932, and reduction of it to practice between March 1 and April 1, 1932. With respect to count 2, appellant alleged that the first drawing of the invention was made on or about October 12, 1932, and that it was described to others on or about the same date. He alleged reduction to practice of the subject matter of said count on or about October 14, 1932. As to count 4, he alleged the first drawing to have been made on or about March 5, 1937, and reduction to practice on or about October 6, 1937. Reasonable diligence in adapting and perfecting the invention is also alleged. All of the dates claimed in the preliminary statement of appellee are subsequent to the dates claimed by appellant. Both parties took testimony and introduced many exhibits.

The Board of Interference Examiners, in its decision, analyzed the testimonial record in connection with the exhibits on behalf of appellant and held that there was no satisfactory evidence that appellant was in possession of the subject matter of counts 3 and 4 prior to the filing date of his application. The board further held as to all of the counts that the evidence was insufficient to prove reduction to practice of the invention as defined in the counts. The board also pointed out that the failure of appellant to file his application for a period of approximately either two years or seven years after his alleged reduction to practice, and the filing by him of numerous applications for other related subject matter during those periods, strongly suggested that the alleged reduction to practice was unsatisfactory and was nothing more than an abandoned experiment, citing Grus v. Eynon, 276 O.G. 775, 1920 C.D. 49, and Stewart v. Robinson, 55 F.2d 998, 19 C.C.P.A. (Patents) 953, 419 O.G. 291, 1932 C.D. 245. In this respect the board stated: "It was previously pointed out that Tinnerman offered no proof of activity after October 6, 1937, and thus failed to establish that he was diligent." By reason of the above holdings, the record on behalf of appellee was not discussed or considered.

The issue here concerns the sufficiency of appellant's proof.

It will be observed that counts 3 and 4 differ from the other counts, in the limitation that the means for retaining the fastener in position is "a tongue struck out of the sheet material forming the protuberance" as set out in count 3, and "a tongue struck out of a wall of the protuberance" in count 4. Count 2 is the only count which provides for cooperating holes in both arms of the device.

The evidence on behalf of appellant concerning counts 3 and 4, in our opinion, does not disclose the limitation of a tongue struck out from the protuberance or from the sheet material forming the protuberance. There is no question but that in the application of appellant there are drawings showing such struck out elements. Appellee has not questioned the right of appellant to make the counts by reason of those drawings. A careful examination of

the record and exhibits of appellant, however, convinces us that he at no time reduced to practice the structure defined in counts 3 and 4.

Appellant's evidence on reduction to practice concerns fasteners made and tested during two periods, the first of which was in the year 1932 and the second in 1937. The fasteners made in 1932 comprise a strip of thin metal, on one edge of which is an extension of top and bottom portions of the strip with a space between said extensions. The extensions are turned back over the strip. In the body of the strip there is a protuberance through which is punched a hole, the edges of the top for the hole being so aligned as to act as the female thread portion of a bolt or screw. Adjoining the hole is a bump in the strip in a downward direction, the purpose of which is to affix the device into a hole in the plate to be fastened so that it will remain there. One of these exhibits turns the entire end of the plate on the body of the fastener.

From the above description of the exhibits offered to prove a reduction to practice by appellant, it is clear that there is no tongue which has been struck from a wall of the protuberance made in punching the hole as required by counts 3 and 4. Neither can it reasonably be said that it is struck from the sheet material forming the protuberance. While the entire fastener is made of a single sheet of metal, all of that sheet cannot be said to be a sheet material forming the protuberance.

There was no activity on the part of appellant toward reducing to practice the subject matter of the counts between 1932 and 1937. It is true that during that time efforts were made to sell the fastener of appellant to various manufacturing companies who wished to use the device in "blind locations". After the first device was made, a test thereof apparently impelled the appellant to have another device made which differed from the first in that the fastening protuberance was made deeper. According to the record other devices comprising other minor changes were subsequently made. These devices were developed for the specific purpose of selling them to two manufacturing companies, yet there is no evidence that such fasteners were ever sold at any time.

In 1937 another device was made, a sample of which is before us as Exhibit 22–A. We do not think it necessary to discuss whether or not the sample was properly proved, because an examination thereof clearly discloses that there has been no striking of a tongue out of the protuberance as required by counts 3 and 4. Neither is there a tongue struck out of the material in the region of the thread engaging portion as required by counts 1, 2 and 5. Nothing at all was done with respect to further reduction to practice of the devices defined in the counts from 1937 up to the time that appellant filed his application in 1939. Exhibit 23 is alleged by him to be the sketch from which Exhibit 22–A was made and is alleged to be proof of conception of the invention. An examination of said sketch discloses it to be a vague drawing from which, it seems to us, without further illustration, Exhibit 22–A could not have been made. Furthermore, the said sketch cannot in our opinion be considered as evidence of conception of the invention as defined by any of the counts. Therefore it is clear to us that the Board of Interference Examiners properly held that appellant had not even a conception of the subject matter of counts 3 and 4 prior to the filing date of his application in 1939.

With respect to counts 1, 2 and 5, as well as to counts 3 and 4, it was believed by the board that none of the devices as hereinbefore mentioned proved to be satisfactory. It is quite true that witnesses other than appellant testified as to the alleged successful testing of the 1932 devices, relying upon memory after a lapse of eight years. One witness was Albert H. Tinnerman, the father of appellant; the other, Charles Giammatteo, an employee of Tinnerman Products, Inc., since 1936. Prior to that time the latter witness was in charge of the Small Order and Sample Department of the company which made the devices of 1932 in accordance with instructions from appellant. In casting some doubt upon the accuracy of the memory of these witnesses the board stated as follows:

"* * * Kost entered as a cross exhibit a copy of patent 1,928,468, issued to A. H. Tinnerman and filed March 12, 1932. This patent discloses a structure about which Tinnerman might well have been testifying since after a period of years his recollection would be somewhat unreliable. The device of this patent was considered sufficiently satisfactory to warrant the filing of an application immediately thereafter.

"Giammatteo also testified that he had made successful tests of exh. 3 but in his later testimony relating to exhs. 15–A to D he was obviously confused. His memory could hardly be expected to be any better with respect to exh. 3 than exh. 15."

We have examined the drawings in the Tinnerman patent referred to in the preceding quotation and compared them with the sketch, Exhibit 1, of appellant, dated February 22, 1932. It is clear to us that the only difference between one of the drawings on said exhibit and several drawings in the said patent is that the device shown in the exhibit contains a depression or bump near the periphery of the punched hole to maintain the device in place. Since the patent was applied for contemporaneously with some of the work done on the present invention, it is reasonable to conclude that the memory of the witness A. H. Tinnerman may have been, and probably was, confused. The witness testified that he had made tests of many fasteners and "one of this character also". The most favorable light in which the testimony of this witness may be viewed is that he made a test of a fastener like Exhibit 3. There are other kinds of fasteners made under Tinnerman patents that could well be said to be like Exhibit 3, particularly the one hereinbefore referred to in Tinnerman patent No. 1,928,468. We are of opinion that the testimony of this witness, in view of the circumstances herein, has not the clarity or definiteness necessary to give it weight as corroborating evidence as to reduction to practice.

The witness Giammatteo was confused in his testimony concerning tests made by him of the devices of 1932, in that he first stated that a certain one of these exhibits met all the requirements of appellant's device and that this was determined by "getting a piece of steel and trying to embody a piece of glass, for which they were intended, and trying them out that way". The witness clearly meant that he made the test by fastening a piece of steel to a piece of glass by means of the said exhibit. He was further asked if appellant ever used those fasteners for holding enamelled panels in place, and answered "Not that particular one". He further stated that the said exhibit was assumed by him to be for use on glass and that the testimony he was giving concerning the test was merely his recollection of an assumption. He was then shown the sketch, Exhibit 1, and asked if that refreshed his recollection as to the use of the fastener on glass. After looking at that exhibit, he stated that the exhibit was used not for glass but for sheet porcelain enamel or for sheet steel and he then stated that the material used in his test was sheet steel. It is reasonable to suppose that confusion such as appeared in the testimony of Giammatteo would naturally exist for the reason that subsequent to the termination of his employment in 1936 he was employed by Tinnerman Products, Inc., which was making blind fasteners similar in general character to those defined by the involved counts.

There was no oral evidence concerning reduction to practice except that given by the two above-named witnesses. Therefore we are unable to see how the Board of Interference Examiners could have awarded priority of the subject matter embraced in the involved counts to appellant.

Appellant herein was an experienced inventor having filed between the year 1932 and the date of his present application at least 46 patent applications for devices of a similar character, several of them becoming patents. The devices of these patents were generally for the same purpose as the invention here in issue and were actually offered commercially. It taxes credulity to believe that any inventor with the experience of appellant would have allowed his devices made in 1932 and 1937 to rest without endeavoring to secure patent protection thereon until 1939. The only reason in our opinion that appellant's application was not filed long prior to 1939 is that he did not consider the device had been so reduced to practice as to be worthy of patent protection, and regarded it as an abandoned experiment. See Stewart v. Robinson, supra, and the cases cited therein.

The decision of the Board of Interference Examiners is affirmed.

Affirmed.

LENROOT, Associate Judge, took no part in the consideration or decision of this case.