**JENNINGS v. HILL.**

Patent Appeal No. 5626.

United States Court of Customs and
Patent Appeals.

*Feb.* 2, 1950.
Rehearing Denied Sept. 29, 1950.

Francis D. Thomas, Washington, D. C. (W. W. Cochran, John M. Kisselle, Detroit, Mich., and Stephen W. Blore, Washington, D. C.; of counsel), for appellant. Byerly, Townsend & Watson, New York City (Ralph M. Watson, New York City, of counsel), for appellee.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, and JOHNSON, Associate Judges.

JACKSON, Judge.

This is an appeal in an interference proceeding from a decision of the Board of Interference Examiners of the United States Patent Office, awarding priority of invention of the subject matter defined by five counts to appellee. The counts are claims copied by appellee from the patent of appellant, and read as follows:

"1. The art of pad dyeing to produce a solid color effect which comprises subjecting textile materials having discrete fibers to an emulsion comprising fine droplets of organic solvent uniformly dispersed in an aqueous medium, the individual droplets having dissolved therein a resinous substance containing coloring matter, and then drying the textile material to form a product comprising textile material having coloring matter bonded to its discrete fibers by a substantially continuous film of resinous substance.

"2. A solid-colored textile material comprising a fabric having discrete fibers, and means substantially covering the discrete fibers to color the same, said means comprising a thin substantially continuous film of resinous substance containing coloring matter, the material being, to the naked eye, of a uniform color and appearance, substantially identical with the product of claim 9 (of Hill, claim 4 of Jennings).

"3. The art of treating porous textile materials having discrete fibers comprising as a step, applying to discrete fibers of the structural yarns of the fabric an aqueous dispersion of water-insoluble resin, water-insoluble coloring matter and water-insoluble organic solvent for the resin, the consistency of the dispersion being so thin as to leave said interstices open, the organic solvent being of a nature as to carry the dispersed resin and coloring matter into the capillary spaces of the material, and drying the material to leave a thin coating of resin and coloring matter around the discrete fibers without materially affecting the porosity of the material.

"4. The method of dyeing porous textile materials having discrete fibers which comprises applying to the material coloring matter emulsified with a solvent and a resin in water, the emulsion being so thin that the droplets of solvent containing coloring matter and resin are carried into the discrete fibers of the material, and then drying the material to deposit a thin film of resin containing coloring matter on the discrete fibers of the material without materially affecting the porosity thereof.

"5. The art of treating porous textile materials having discrete fibers comprising, as a step, applying to discrete fibers of the structural yarns of the fabric an aqueous dispersion of water-insoluble resin, water-insoluble coloring matter and water-insoluble organic solvent for the resin, said dispersion comprising a volatile content of at least 80% by weight and being of such thinness as to provide a relatively fine oil-in-water emulsion in which the tiny droplets of organic solvent containing the water-insoluble resin and water insoluble coloring matter comprise the disperse phase, the consi'tency [sic] of the emulsion being such that the liquid will enter the capillary spaces of the textile material, whereby the droplets of organic solvent containing dissolved water-insoluble resin and water-insoluble coloring matters are adsorbed by the textile material due to the high affinity of the organic solvent for the textile material, and drying the material to leave a thin coating of resin and coloring matter on the discrete fibers of the material without materialy affecting its porosity."

The interference involves a patent of appellant, No. 2,334,199, dated November 16, 1943, upon an application, serial No. 288,588, filed August 5, 1939, and assigned to Copeman Laboratories Company of Flint, Michigan, and an application of appellee, serial No. 510,512, filed November 16, 1943, as a continuation of an application

No. 298,764, filed October 10, 1939. The application is assigned to Interchemical Corporation of Ohio. Both parties took testimony, filed briefs and were represented by counsel at the final hearing.

Appellant, in his preliminary statement, alleged the first written description, disclosure of the invention to others, reduction of it to practice and the beginning of exercise of diligence as of July 9, 1934. The preliminary statement filed on behalf of appellee alleged first disclosure, written description, and reduction to practice of the invention together with the beginning of the exercise of reasonable diligence in adapting and perfecting the invention as of May 31, 1938.

Appellant moved to dissolve the interference as to counts 1, 2 and 4 for the stated reason that they are unpatentable to appellee over certain prior art and that appellee was guilty of laches because of his failure to copy the claims constituting the counts of the interference in his original pending application with required promptness and diligence until an unreasonable length of time after he had notice of the allowed claims of appellant and after public use of the subject matter of the counts.

The Primary Examiner denied the motion to dissolve, stating that in the preliminary statement of appellee completion of the involved invention was alleged to be prior to the filing date of appellant. He pointed out that a preliminary statement has the same effect as an affidavit under Rule 75, Rules of Practice, Patent Office, 35 U.S.C.A.Appendix, and that the allegations in such statement constitute a prima facie case.

The examiner denied the motion with respect to laches, holding that the question of when appellee knew of appellant's claims and his diligence thereafter was a subject upon which testimony would have to be taken and that it could then be considered in connection with the termination of priority.

The involved invention is an improvement in the art of treating textile fabrics by a process of pad dyeing or "padding." It appears that when cloth is so processed, it is given a uniform continuous color by having had it immersed in a thin watery fluid, known as padding liquor. The cloth to be treated travels under a revolving roller in a trough containing the colored padding liquor. After the cloth passes through the liquor, it is squeezed between rollers so that the excess liquor may be removed. The cloth, which is then colored, is passed through a heater where it is dried. It is said that prior to the present invention, the padding liquor employed for the above mentioned purpose consisted of soluble dye stuff in a solvent.

The padding liquor of the counts is an oil-in-water emulsion, the inner oil phase of which is made of tiny droplets of an organic solvent having a resinous substance, which contains coloring material dissolved therein. The process defined by the counts results in the binding of the coloring matter around the fibers of the material with the resinous substance in the form of a thin substantially continuous film.

The filing date of the involved application is the same as the date of appellant's patent, and appellee being the junior party had the burden of proving priority of invention by a preponderance of the evidence. The board, after analyzing the evidence offered on behalf of appellee, held that invention of the involved counts was conceived and reduced to practice by him on May 31, 1938.

Appellee is a graduate engineer and during his employment by Aridye Corporation (wholly owned by appellee's assignee) he and other chemists were employed in a small laboratory of the Aridye Corporation at Fairlawn, New Jersey. The business of that corporation when appellee entered its employment in February 1938 was the manufacture and sale of inks for use in the printing of textiles. Included in the equipment at the Aridye Laboratory was a pad dyeing apparatus. Appellee had charge of the development of textile printing inks, which consisted of thick, pigmented water-in-oil emulsions. In the course of chemical experiments conducted at his home and in connection with certain experiments with cosmetic formulations, appellee applied the

technique he used with respect to his cosmetic formulations in the preparation of an oil-in-water dye bath for textiles. On May 31, 1938, appellee pad dyed cloth in the padding apparatus of the Aridye Laboratory in the presence of fellow employees, the padding liquor consisting of pigmented oil-in-water emulsion.

The personnel of the subsidiaries of Interchemical Corporation, engaged in development work, were furnished, in accordance with the corporation's business system, blank forms directed to the patent department for the purpose of being filled out with a brief description of any development deemed of sufficient importance for the filing of a patent application. Appellee filled out such form and signed it on September 12, 1938. The form was also signed by his superior and another chemist, both of whom had witnessed the above mentioned padding operation by appellee.

The description of the invention, as set out in the form, is of the type defined by the involved counts and it is further stated on the form that the invention was described in writing on May 31, 1938, in a notebook of appellee. It appears that there is a system in vogue at the Aridye plant by which reference to materials employed in formulations is made in certain code numbers and in accordance with such system most of the constitutents of appellee's formulations were so noted.

A plant run of the process was made August 12, 1938, in the dye works of the Glasgo Finishing Company which is an independent company and whose business is pad dyeing of textile fabrics. That run was a pad dyeing operation on a commercial scale with the oil-in-water emulsions of appellee's application. A sample of a commercial fabric made in that run is in evidence and the test made on it was demonstrated to be successful.

■ The evidence of appellee was amply corroborated so it is clear to us that the board did not err in holding appellee to be entitled to the date of May 31, 1938, for both conception and actual reduction to practice of the invention defined by the involved counts.

■ It appears that appellant was employed in research work by Dr. Bartell, Professor of Chemistry at the University of Michigan, from which appellant received his degree of Doctor of Chemistry. His work with Dr. Bartell began about July 1, 1933, and continued until about September 1, 1934. In July appellant was working on a method of finishing fabrics in accordance wtih a process subsequently shown in the Bartell patent, No. 2,097,012, dated October 26, 1937, upon an application, serial No. 743,090, filed September 7, 1934. In the Bartell method fabric is treated with a resinous oil-in-water emulsion containing no added coloring. During the research work, it was discovered that the resins in the Bartell emulsion imparted a yellowish cast to fabric intended to be used as shoe lining. That color was objectionable and in order to mask it, a very small quantity of dye stuff was added to the Bartell emulsion. Appellant's work and the results thereof were recorded in his notebook. We think it is fair to state that the treating of shoe lining with the coloring matter added to the Bartell emulsion must be held to be a failure for the reason that it appears in the notebook of appellant that there was no advantage in attempting to color shoe lining. There is no further reference subsequent to the date of that entry in the notebook relating to the addition of coloring matter to the emulsion of Bartell. The record shows some statements to the effect that fabrics had been treated hundreds of times between 1934 and 1939, but there was no evidence introduced to support those statements and no samples of such treated fabrics were produced. Therefore, we may properly state that such evidence was "lacking in the definiteness required in interference proceedings upon vital matters, * * *." Keefe v. Watson, 142 F. 2d 283, 286, 31 C.C.P.A., Patents, 1080, 1086.

Appellant and Dr. Bartell have testified, but not definitely nor clearly, that compositions disclosed in the Jennings patent had been used commercially during a period beginning in September 1934. They stated that the Sherwin-Williams Company had manufactured such compositions but it was

finally admitted that they contained no added coloring matter and were in fact the formulations of the Bartell patent. It may be noted that the only difference between the formulations of the Bartell patent and those of the patent of appellant is that the latter contains added coloring matter.

The successor of appellant in the laboratory of Dr. Bartell testified that the aim of his research was to produce white treated cloth and that was the problem given to him by Dr. Bartell. It appears that the cloth, treated by the witness with the Bartell oil-in-water emulsion, similarly to the shoe lining worked upon by appellant, was tinged with a yellowish color from the resins employed in the padding material, and in order to counteract that unsought hue there was added to the resin solution a blue oil soluble dye. Apparently the witness was working on the same problem as was his predecessor, the appellant. Throughout the record it appears that the main efforts of appellant, his successor and Dr. Bartell were directed to the elimination of the yellowish color and the production of a "bleaching white" or a "blue white" in their treated fabric.

■ Appellant introduced in evidence some light blue colored cloth which he stated had been made by him in the year of 1947, using his method. However, such work was *ex parte* in character and may not be considered by us as proof of a reduction to practice alleged to have been made about 13 years prior to that date. Carson v. American Smelting & Refining Co., 9 Cir., 1925, 4 F.2d 463.

The dye stuff said to have been used in the *ex parte* dyeing work was "Sudan Blue GA." Such dye, as noted in appellant's notebook and his use of it on July 9, 1934, indicates that the experiment then conducted was not successful for the reason that the dye stuff "Had a tendency to rise in the foam and make material spotty even though dilute."

We think it is reasonable to believe that appellant, prior to the year 1939, did not feel that his work had been successful. He did not file his application until that year, and accounted for the delay by stating that he was simply a chemist and could not decide whether a thing was patentable or not and that he did not personally feel that anything that had been done was carried to the point where it was ready for a patent application.

It appears that appellant is a prolific inventor in several different arts. Between the years of 1934 to and including 1939, he made application for and had subsequently granted five different patents: one relating to Tensioned Yarn and Thread and Method of Forming Same; a second, in which he was a co-inventor, relating to Refrigerating Apparatus; another for a Recovery Apparatus for the recovery of solvents from substances or materials treated with a solution of a resinous substance; a fourth, a Plant Watering Apparatus which disclosed a device for supplying water to growing plants; and a fifth, as a co-inventor, for a patent on a Diaphragm and Method of Forming Same, relating to the fabrication of diaphragms, such as fuel pump diaphragms. Therefore, it is apparent that appellant was well aware of the importance of patent protection.

■ In April of 1939, appellant met some of the principals of the Aridye Corporation and collaborated closely with them in their research. It is reasonable to infer that he must have learned of the results obtained in such research by means of pad dyeing with a pigmented oil-in-water emulsion. It does not appear that appellant ever had any personal contact with appellee. It was after such collaboration that appellant's application was filed. We think that the long delay by appellant in filing his application after his alleged conception and reduction to practice indicates that such work was nothing more than an abandoned experiment. Tinnerman v. Kost, 129 F.2d 725, 29 C.C.P.A., Patents, 1259; Stenger et al. v. Holmes, 103 F.2d 410, 26 C.C.P.A., Patents, 1224; Whitehead v. Diamond, 97 F.2d 604, 25 C.C.P.A. Patents, 1357.

■ Appellant while at Fall River, Massachusetts, in 1935, experimented in the treatment of a cord used by florists. A broker who was retailing a green cord, called "Florist Twine," told appellant that the color on the cord was produced by vat dyeing. He said the yarn was made in one

place, then vat dyed and packed in another place. Appellant testified that he added an oil soluble dye to one of his solutions and thus produced a green treated cord. We are of opinion that appellant's production of such cord in the manner in which he states can not be held to be proof of a reduction to practice of the invention defined by the counts. Counts 2, 3 and 5, specifically, call for a fabric, and it seems to us that counts 1 and 4, which relate to the treatment of textile materials, must be interpreted as meaning more than a yarn or a cord. The expressions, "fabric" and "textile material," are used synonymously in counts 3 and 5, and in our opinion have the same relationship in appellant's patent which refers to a "fabric or textile material."

■ Viewing the record on behalf of appellant in its most favorable aspect, we think that it does not properly show anything more than a mere accidental practice which does not constitute reduction to practice. Janette v. Folds et al., 38 F.2d 361, 363, 17 C.C.P.A., Patents, 879.

Counsel for appellant in their brief before us challenged the award of priority by the board on the ground that appellee failed to establish reduction to practice prior to appellant's filing date; that appellee was guilty of laches; and that he had failed to test the fabrics which had been pad dyed by his method.

It is true, as stated by counsel for appellant, that the board said nothing in its decision with respect to laches. Counsel for appellee state in their brief that the reason why the board did not discuss laches is to be found in appellant's brief before the board, in which it was admitted that "the rules permit copying of the claims within a year of the issue of a patent." The admission has not been challenged by counsel for appellant.

■ There can be no question but that the original application of appellee was expeditiously filed. The invention form was received by the head of the patent department of Interchemical Corporation on September 23, 1938. A search of the prior art was then undertaken, resulting in the discovery of the Bartell patent, which, incidentally, issued to the Copeman Laboratories Company. Appellant claims that the involved invention is an improvement over the disclosure of the Bartell patent. To investigate the Bartell patent, in order to determine whether or not the involved invention distinguished over it, was reasonable and proper. This was done, and because counsel for appellee had a doubt in the matter, he recommended that a license under the Bartell patent be secured by his principal. That license was executed in June 1939, and the draft of the application was started on August 16, 1939, the application completed on October 4 and executed on October 5 of that year. It was filed in the Patent Office on October 10 and prosecuted diligently therein, and on May 18, 1943, was allowed with three claims.

Subsequent to the allowance of the parent application, of appellant and close to the date upon which payment of the final fee was due, counsel for appellant showed counsel for appellee the allowed claims of the Jennings patent. Counsel for appellee made copies of those claims subsequent to the date on which the final fee of appellant's application had been paid.

The claims which had been allowed to appellant were shown to counsel for appellee on October 12, 1943, who decided, after consultation with outside counsel, that the time was too short to attempt to secure those claims in the pending application of appellee, and that a continuing application should be filed. The involved continuing application was filed, and the parent application permitted to become forfeited. It appears that the filing of the continuing application was explained to and approved by counsel for appellant. When filed, the continuing application contained claims of the same scope as, but in different language from, the allowed claims of appellant, and after the patent of appellant issued, claims corresponding to the counts were copied by appellee in strict accordance with the rules prescribed by the Patent Office. As properly pointed out in the brief of counsel for appellee, "The correctness of the procedure determined upon and followed by counsel for Hill is shown by the fact that it was

necessary for Hill to appeal to the Board of Appeals to obtain the claims forming the counts of this interference." Therefore, we can not agree with the contention of counsel for appellant that appellee "circumvented" the declaration of an interference by the Patent Office between the application of appellant and that of appellee. The record shows that during the time the assignees of the parties were apparently on friendly terms, it was agreed between counsel that both applications should be filed and an interference declared to determine priority. It seems to us that what they desired to have done has been done. An interference has been declared and priority of invention has been determined by the Board of Interference Examiners.

With respect to the contention that appellee had failed to test fabric that had been pad dyed by his method, it appears that fabric dyed according to the method defined by the counts was tested by the Better Fabrics Testing Bureau, the official laboratory of the National Dry Goods Association. A report of such testing was made to Aridye under date of April 11, 1939, admittedly prior to any communication by appellant to Aridye Corporation of any of his formulations. A copy of that report was filed by appellant with an affidavit executed by him on July 7, 1942, for the purpose of convincing the Patent Office that fabric dyed by appellant's method met the tests. The report states as follows:

"The green cotton sheer fabric color is resistant to the most severe cotton wash test—that it did not show fading or staining in comparison with original sample of material—when laundered at 212° F temperature in alkaline soap suds containing 1% available chlorine for a period of one hour. In sunlight tests—200 hours of fadeometer exposure—no fading tendency was observed.

"The dye is reported as having excellent fastness, rating as one of the most durable textile dyeings.

"Better Fabrics Testing Bureau, Inc.

Official Laboratories (N. R. D. G. A.)"

We have no doubt that the said testing made of the fabric was amply sufficient.

The Board of Interference Examiners considered in great detail the record of appellant and properly stated, in our opinion, that, in view of all the circumstances, appellant could not be considered to be in possession of the subject matter defined by the quoted counts earlier than the date of appellee's actual reduction to practice. It seems to us, as was observed by the board, that appellant apparently attached much greater importance to his early experiments after having learned of appellee's development, and in effect was spurred into activity upon learning of the work of appellee.

The decision of the Board of Interference Examiners is affirmed.

Affirmed.

By reason of illness, HATFIELD, Judge, was not present at the argument of this case and did not participate in the decision.